# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSANNA SALCIDO,<br><br>            Plaintiff,<br><br>   v.<br><br>ANDREW M. SAUL,[1] Commissioner of Social Security,<br><br>            Defendant. | CASE NO. EDCV 18-2214 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

## I.
## INTRODUCTION

Susanna Salcido ("Plaintiff") brings this action seeking to overturn the decision of the Acting Commissioner of Social Security (the "Commissioner" or "Agency") denying her application for disability benefits available to Medicare Qualified Government

---

[1] Andrew M. Saul, Commissioner of Social Security, is substituted for his predecessor Nancy A. Berryhill, whom Plaintiff named in the Complaint. See 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

Employees (MQGE). The parties consented pursuant to 28 U.S.C. § 636(c) to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 11-13). For the reasons stated below, the decision of the Commissioner is REVERSED, and this case is REMANDED for further administrative proceedings consistent with this decision.

## II.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an Administrative Law Judge ("ALJ") conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

|   |     |                                                                 |
|---|-----|-----------------------------------------------------------------|
| 1 | (1) | Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. |
| 2 | (2) | Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three. |
| 3 | (3) | Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four. |
| 4 | (4) | Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five. |
| 5 | (5) | Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled. |

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant

can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

### III.

### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act"). (AR 26-36). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 20, 2013, the alleged onset date.[2] (AR

---

[2] Plaintiff did not have sufficient quarters of coverage to qualify for DIB. (AR 418). She is, however, eligible for Medicare coverage based on a period of prior government employment if she meets DIB requirements as of her date last insured for Medicare coverage. 42 U.S.C. § 1395c. The ALJ found that Plaintiff meets the insured status requirements with respect to Medicare Qualified

4

28). At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine; congenital thoracic scoliosis, with an old, subtle vertebral fracture; fibromyalgia; and obesity are severe impairments. (AR 28). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations.[3] (AR 29).

The ALJ then assessed Plaintiff's RFC and concluded that she can perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b) except:[4] "[Plaintiff] should no more than frequently climb ramps, stairs, ladders, ropes, and scaffolds; [Plaintiff] should no more than frequently balance, stoop, kneel, crouch and crawl." (AR 29-30). At step four, based on the VE's testimony, the ALJ found that Plaintiff is capable of performing past relevant work as a nursery school attendant as generally performed in the

---

Government Employees (MQGE) through December 31, 2018. (AR 28; see id. 418).

[3] Specifically, the ALJ considered whether Plaintiff meets the requirements of listing 1.04 (disorders of the spine) and concluded that she does not. (AR 29).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

5

national economy. (AR 35). Accordingly, the ALJ found that Plaintiff was not under a disability as defined by the Act from May 1, 2013, through the date of the decision. (AR 35-36).

**IV.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-

21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

**V.**

**DISCUSSION**

**A.  The ALJ's Reasons for Discrediting Plaintiff's Subjective Symptom Testimony Were Not Supported By Substantial Evidence**

On July 27, 2017, Plaintiff testified that she is unable to work due to chronic, severe back pain. (AR 276-77). Physical therapy, acupuncture, and trigger injections have provided only temporary relief. (AR 277). She must constantly change positions in order to alleviate the pain. (AR 277). Plaintiff can stand or walk for 30 minutes before needing to sit down, and can sit for for 20 minutes before needing to get up and move around. (AR 278). She experiences various side effects from her pain medications, including blurry vision, nausea, and headaches. (AR 279).

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom

she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (emphasis in original) (citation omitted). "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Trevizo, 871 F.3d at 678 (citation omitted); see also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and

8

other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on

permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ found that Plaintiff's degenerative disc disease, congenital thoracic scoliosis, fibromyalgia, and obesity are medically determinable impairments, and he made no finding of malingering. (AR 28, 30-31). Nevertheless, the ALJ concluded that "diagnostic test results and physical examinations by [Plaintiff's] providers showed no more than mild abnormalities." (AR 31). The ALJ's conclusions are contrary to law and not supported by substantial evidence.

First, the Ninth Circuit has consistently held that an ALJ "may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." Reddick, 157 F.3d at 722; accord Bray, 554 F.3d at 1227; Kelly v. Berryhill, 732 F. App'x 558, 563 (9th Cir. 2018). In any event, the ALJ misapprehends the medical evidence. The ALJ emphasized that diagnostic tests, including MRIs, x-rays, straight leg raise, gait, strength, reflexes and sensation, were generally normal. (AR 31) (citing id. 1207, 1412, 1474-75, 1630, 1680, 1693, 1813, 1844). However, Plaintiff suffers from fibromyalgia, which the ALJ acknowledged is a severe, medically determinable impairment. (AR28). Fibromyalgia is "a rheumatic disease that

causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004). Typical symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease." Id. at 590. Those suffering from fibromyalgia have normal muscle strength, sensory functions, and reflexes. Revels v. Berryhill, 874 F.3d 648, 656 (9th Cir. 2017). Because "there are no laboratory tests to confirm the diagnosis," fibromyalgia is assessed "entirely on the basis of patients' reports of pain and other symptoms." Benecke, 379 F.3d at 590; see Revels, 874 F.3d at 657 (a "diagnosis of fibromyalgia does not rely on X-rays or MRIs"). Here, as the ALJ acknowledged (AR 32), Plaintiff's fibromyalgia is well supported by the medical record, including multiple trigger points, widespread tenderness, and fatigue. (AR 1811, 1937-41, 1963-65, 1988, 2009, 2159, 2248-51, 2397). Further, Plaintiff consistently complained of disabling pain to her medical providers. (AR 31, 895, 929, 1108, 1190, 1192, 1411, 1474-75, 1617, 1628-29, 2181, 2248-51). Thus, the decision below improperly discredited Plaintiff's testimony of disabling pain merely because of certain normal diagnostic tests, when Plaintiff suffers from a disease that is not apparent from such tests.

Second, the ALJ improperly discredited Plaintiff's subjective statements because she "reported improvement in her symptoms and limitations with treatment." (AR 33). However, because the symptoms of fibromyalgia "wax and wane," "after a claimant has

11

established a diagnosis of fibromyalgia, an analysis of her RFC should consider 'a longitudinal record whenever possible.'" Revels, 874 F.3d at 657 (quoting SSR 12-2p, at *6). Thus, citing isolated records in November 2015 and March 2017 (AR 33, 1880, 2377) is insufficient to undermine Plaintiff's credibility. Moreover, as Plaintiff testified (AR 277) and the ALJ acknowledged (AR 31), regular epidural injections provided Plaintiff with only temporary relief.

Nor can Plaintiff's treatment be considered "conservative" or "routine." (See AR 32-33). A conservative course of treatment may discredit a claimant's allegations of disabling symptoms. See, e.g., Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) (treatment with over-the-counter pain medication is "conservative treatment" sufficient to discredit a claimant's testimony regarding allegedly disabling pain). Here, in addition to receiving periodic epidural steroid and trigger point injections, Plaintiff was prescribed multiple pain medications, including Tramadol, a strong, narcotic-like pain reliever, and management of pain through the use of a TENS unit.[5] (AR 462). The consistent use of narcotic medications, a TENS unit, and epidural and trigger point injections cannot fairly be described as "conservative" treatment. See Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) (treatment consisting of "copious" amounts of narcotics, occipital

---

[5] "Transcutaneous electrical nerve stimulation (TENS or TNS) is the use of electric current produced by a device to stimulate the nerves for therapeutic purposes." <https://en.wikipedia.org/wiki/Transcutaneous_electrical_nerve_stimulation> (last visited June 17, 2019).

12

nerve blocks, and trigger point injections not conservative); Madrigal v. Berryhill, No. CV 17 0824, 2017 WL 5633028, at *6 (C.D. Cal. Nov. 21, 2017) ("[P]laintiff has been prescribed strong prescription pain medications, including the narcotic medication Norco, has received spinal injections, and has been referred for a lap band surgery consultation, treatment that is not necessarily conservative."); Soltero De Rodriguez v. Colvin, No. CV 14-5765, 2015 WL 5545038, at *4 (C.D. Cal. Sept. 18, 2015) (management of pain through medicine, NMS/TENS unit, and spinal injections not conservative).

Finally, the ALJ erred in concluding that Plaintiff "engaged in activities that are not consistent with her allegations of severity." (AR 33). "ALJs must be especially cautious in concluding that daily activities are inconsistent with [subjective symptom testimony], because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016. If a claimant's level of activity is inconsistent with the claimant's asserted limitations, it has a bearing on credibility. Id. "Though inconsistent daily activities may provide a justification for rejecting symptom testimony, the mere fact that a plaintiff has carried on certain daily activities does not in any way detract from her credibility as to her overall disability." Revels, 874 F.3d at 667 (citation and alterations omitted); see Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities does not

13

in any way detract from her credibility as to her overall disability.") (citation and alterations omitted). Indeed, a claimant "does not need to be utterly incapacitated in order to be disabled." Benecke, 379 F.3d at 594 (citation omitted). Here, the decision below noted that Plaintiff exercised regularly, for up to 20 minutes at a time, two to three days a week. (AR 33). Nevertheless, the decision fails to explain how this level of exercise undermines Plaintiff's subjective statements that she can stand or walk for only 30 minutes and can sit for only 20 minutes before needing to change positions. Further, physical therapy and "gentle exercise" is part of Plaintiff's treatment regimen for fibromyalgia. (AR 1963, 1986, 1989, 2008, 2010); see <www.mayoclinic.org> (last visited June 14, 2019). The ALJ also emphasized that Plaintiff "continued to babysit her grandchildren, which undoubtably takes a significant amount of exertional ability and agility." (AR 33). However, the record contains no description of how old Plaintiff's grandchildren are or what activities, if any, Plaintiff engaged in with them. At her hearing, the ALJ confirmed that Plaintiff has a part-time job watching her grandchildren three days a week, but asked no follow-up questions to determine the exertional level the job entails. (AR 275-76). Nor did the ALJ ask the VE to classify the babysitting job. (AR 281). Thus, there is nothing in the record to demonstrate that Plaintiff's part-time job babysitting her grandchildren is somehow equivalent to the demands of a full-time nursery school attendant.

In sum, the decision below failed to provide clear and convincing reasons, supported by substantial evidence, for

14

rejecting Plaintiff's subjective symptoms. The matter is remanded for further proceedings. On remand, the ALJ shall reevaluate Plaintiff's symptoms in accordance with the current version of the Agency's regulations and guidelines, taking into account the full range of medical evidence.

**B.  ALJ's RFC Assessment Is Not Supported By Substantial Evidence**

"A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations." Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989) (citing 20 C.F.R. § 404.1545). An RFC assessment requires the ALJ to consider a claimant's impairments and any related symptoms that may "cause physical and mental limitations that affect what [he] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining a claimant's RFC, the ALJ considers all relevant evidence, including residual functional capacity assessments made by consultative examiners, State Agency physicians, and medical experts. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); see also id. §§ 404.1513(c), 416.913(c).

In his decision, the ALJ found that Plaintiff retains the RFC to perform a limited range of light work. (AR 14). Specifically, Plaintiff "should no more than frequently climb ramps, stairs, ladders, ropes, and scaffolds; [and] should no more than frequently balance, stoop, kneel, crouch and crawl." (AR 29-30). Plaintiff

contends that the ALJ failed account for her "limited ability to flex the lumbar spine." (Dkt. No. 19 at 7-8). The Court agrees.

The medical record indicates that Plaintiff has a limited ability to flex her lumbar spine. Prior to the alleged onset date, there are multiple medical records indicating reduced range of motion in Plaintiff's lumbar spine. (AR 774, 885, 895, 1108, 1190, 1192). These limitations continued subsequent to the alleged onset date. (AR 1474-75 (reduced range of motion in October 2014), 1630 (reduced range of motion in lumbar spine in November 2014) 1619 (consultative examiner finding in December 2014 that Plaintiff was limited to 45 degrees of forward flexion; versus normal flexion of 90 degrees), 2181 (finding limited ability to flex the lumbar spine in October 2016, measuring capacity at 60 percent of normal)). While the ALJ acknowledged that Plaintiff's degenerative disc disease of the lumbar spine is a medically determinable impairment that significantly limits her ability to perform basic work activities (AR 28), the RFC does not account for Plaintiff's limited range of motion in her lumbar spine.

Defendant contends that the ALJ accommodated Plaintiff's limited ability to flex her back by limiting her to only frequent stooping. (Dkt. No. 20 at 6). However, the issue is not how often Plaintiff can stoop but instead whether someone who has significant forward flex limitations can perform the demands of a nursery school attendant. While DOT 359.677-018 indicates that a nursery school attendant requires the ability to frequently stoop (defined as 1/3 to 2/3 of the day), the DOT does not discuss whether a

16

person who is limited to 45 degrees of forward flexion, as Plaintiff is, can perform any of the stooping required by the job.[6] Thus, the ALJ should have explicitly inquired of the VE whether someone who has significant forward flexion limitations can perform the fulltime demands of a nursery school attendant. Defendant argues that "Plaintiff herself pointed out that her past work required constant bending unlike the DOT description . . . requiring only frequent stooping." (Dkt. No. 20 at 5) (emphasis in original) (citing AR 1216). But the single medical record cited by Defendant is from November 2012, more than a year prior to the alleged onset date. In any event, the medical records indicate that Plaintiff's past work accommodated her impairment with a special chair and limited standing and allowed her time off for physical therapy. (AR 774, 786, 791). The record contains no evidence whether other employers in the national economy would make these same accommodations.

In sum, the ALJ's RFC assessment is not supported by substantial evidence. On remand, the ALJ shall consider all relevant evidence in assessing Plaintiff's RFC and in deciding whether Plaintiff truly is capable of returning to her past relevant work as a nursery school attendant. If the ALJ declines to consider any relevant evidence, he must give some indication of

---

[6] The hearing transcript and the ALJ's decision inadvertently describe the nursery school attendant position as "359.677-014" (AR 35, 282), which instead describes a "funeral attendant."

17

the evidence he rejects and the reasons for discounting such evidence.[7]

## VI.

## CONCLUSION

Accordingly, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: June 18, 2019

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS OR ANY OTHER LEGAL DATABASE.**

---

[7] Plaintiff also argues that the ALJ failed to properly consider her limited ability to stand and walk. (Dkt. No. 19 at 5-7). However, it is unnecessary to reach Plaintiff's arguments on this ground, as the matter is remanded for the alternative reasons discussed at length in this Order.

18